CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
09/01/2017
JULIA C. DUDLEY, CLERK
BY:
 DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>       *Plaintiff*,<br>v.<br>COUNTY OF CULPEPER, VIRGINIA,<br>       *Defendant.* | CASE NO. 3:16-cv-00083<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  Federal law grants religious institutions rights against religious discrimination. 42 U.S.C. § 2000cc(a)-(b). That law also gives the United States Government authority to "enforce" those rights by filing a lawsuit for injunctive or declaratory relief. *Id.* § 2000cc-2(f). The Government did so here. The Complaint's first paragraph avers that the Government filed suit "based on" the County of Culpeper's "discriminatory denial of a sewage permit to an Islamic congregation," the ICC. The Government neither styled its Complaint as a class action nor challenged any policy or custom. Rather, its claims related to a single incident: the County's denial of the ICC's permit.

  The ICC itself later sued the County. It negotiated a settlement, over which this Court retains jurisdiction and pursuant to which the County granted the permit and paid $10,000 to the ICC. The County took added remedial steps of its own volition: It posted nondiscrimination notices, created a complaint process, and trained employees about religious discrimination.

  The County now says the Government's case is moot. The Government (despite resolution of the ICC's rights as to the permit, despite filing a complaint about only those rights, despite its ability to pursue only injunctive and declaratory relief for those rights, and despite the County's extra prophylactic actions) disagrees, due to its professed ability to seek "broader" relief and an unproven assumption of the County's bad faith. But this case is moot and will be dismissed.

## STANDARD OF REVIEW

When a motion to dismiss is made pursuant to Rule 12(b)(1), the plaintiff bears the burden of proving its assertion of subject matter jurisdiction. *See The Piney Run Pres. Ass'n v. The Cty. Comm'rs Of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008). The County's motion does not rely solely on the Complaint's allegations, but also on facts outside of the Complaint that postdate it. Accordingly, the County presents a factual challenge to jurisdiction, and the Court may "go beyond" the Complaint and consider the parties' submissions. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017); *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## FACTS AND PROCEDURAL BACKGROUND

The Complaint's facts are recounted in my prior opinion denying the County's Rule 12(b)(6) motion to dismiss. *United States v. Cty. of Culpeper, Va.*, No. 3:16-CV-00083, 2017 WL 1169767 (W.D. Va. Mar. 29, 2017). Briefly, they are as follows. *See also id*. at *2–4.

The ICC wanted to build a mosque. The only property it could afford would not support traditional septic methods, so it sought a pump-and-haul permit in February 2016.[1] Initially, the permit advanced towards routine administrative approval, but after a local "civic leader" objected to it, the County's Board of Supervisors delayed a vote. The ICC was required to resubmit a new application, which the County Attorney reviewed. All of this departed from the County's alleged historical practice of granting permits effectively as a matter of course.

Prior to and during an ensuing vote on the permit, there was anti-Muslim sentiment expressed to government officials by some members of the public opposing the permit. The alleged content of certain emails also provided an inference that at least some county officials

---

[1] "Pump-and-haul" is a process by which human waste is stored on site, intermittently pumped out of a holding tank, and then hauled away.

believed that the ICC's application had garnered unfair scrutiny based on its religious views. Ultimately, and notwithstanding the County Administrator's determination that the ICC was qualified for a permit, the Board of Supervisors voted 4-to-3 to deny it in April 2016.

The Government instituted this two-count lawsuit seeking to vindicate the ICC's rights under RLUIPA, the Religious Land Use and Institutionalized Persons Act. The crux of the Government's lawsuit was stated up front and clearly: "This is a civil action brought by the United States under [RLUIPA] based on the [County's] discriminatory denial of a sewage permit to an Islamic congregation . . . ." (Complaint ¶ 1). The Government alleged in Count 1 that it was the County's "treatment and denial of the ICC's pump and haul permit" that "imposed a substantial burden on the ICC's religious exercise." (*Id*. ¶ 60). Additionally, the County's differential treatment of the ICC and "its application for a pump and haul permit" on religious grounds amounted to discrimination in Count 2. (*Id*. ¶ 62).

The Government did not assert that the County had violated other individuals' or groups' RLUIPA rights, nor did it style the case as a class action. In fact, the Complaint does not address the RLUIPA rights of anyone but the ICC, and even then it implicated the ICC only to the permit denial. (*See generally* Complaint).

Also absent from the Complaint was any assertion that the County maintained a policy, pattern, or custom violating RLUIPA.[2] Indeed, it was the County's *departure* from its prior, allegedly lenient approach that gave the Government's case particular force: The Complaint maintained that the County singled out the ICC for special, adverse treatment not in line with the

---

[2] After the Government filed its lawsuit, the County on January 3, 2017, instituted a written pump-and-haul policy (dkt. 95-1), which the County says formalizes the criteria historically used to determine whether to grant the permits. The Government admitted at oral argument that it has not alleged that the new policy is discriminatory on its face. Nor has the Government not sought leave to amend its Complaint to challenge the validity of that policy.

– 3 –

County's historical practice. (Complaint ¶¶ 21, 40–41, 47, 50). The Court refused to dismiss the Complaint in part *because of* the County's one-time decision in this particular instance—the only one involving Muslims—to abandon its traditionally low bar and minimal scrutiny applied to pump-and-haul applications. *Culpeper Cnty.*, 2017 WL 1169767, at *1, 3, 5, 8–9 & n.8.

Three weeks before I entered that memorandum opinion, the ICC filed its own RLUIPA lawsuit, which was assigned to me as a related case. *Islamic Center of Culpeper v. Cnty. of Culpeper, Va.*, No. 3:17-cv-19 (W.D. Va. Mar. 9, 2017). A nationally renowned private law firm and a Muslim legal advocacy organization represented the ICC.

In April 2017, the ICC settled its case with the County. (Dkt. 95-2, hereinafter "Settlement Agreement"). The Settlement Agreement required the County to "approve ICC's original Application" without resubmission of the ICC's materials, and to pay $10,000 to the ICC for "direct, out-of-pocket expenses arising" from the permit denial. (*Id*. §§ II.A, D). The County also agreed to "not delay or hinder expeditious approval of any further applications" relating to construction of the ICC's mosque. (*Id*. § II.B). Finally, the Settlement Agreement called for dismissal of the ICC's case with prejudice, with retention of jurisdiction by the Court to resolve "any dispute between the Parties with respect to the terms of, or enforcement of," the agreement. *I.C.C. v. Culpeper Cnty.*, No. 3:17-cv-19 (W.D. Va. May 16, 2017); *see* Settlement Agreement § II.E. The evidence reveals, and the parties do not dispute, that these terms have been fulfilled, including the grant of the permit. (*See* dkt. 95-3, 95-4).

The County has presented evidence of other steps beyond the Settlement Agreement that it has taken to ensure it does not violate RLUIPA in the future. It publically displayed a RLUIPA nondiscrimination notice in its Planning and Zoning Department. (Dkt. 95-5). It now places a page-long insert into all land use application packets that explains the County's

RLUIPA obligations. (Dkt. 95-6). It developed a RLUIPA complaint procedure and complaint form. (Dkt. 95-7). It posted a RLUIPA notice and the complaint form on the Planning and Zoning Department's website. (Dkt. 95-8). And it held a presentation (handouts of which were provided to the Board of Supervisors) on RLUIPA for County staff and the public, modeled after presentations made by Department of Justice attorneys. (Dkt. 108 at 11–12; dkt. 108-1).

This evidence is undisputed. The Government instead insists that the facts and circumstances here do not evince mootness as a matter of law.

## ANALYSIS

A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017). Mootness is sometimes conceptualized as "standing set in a time frame," such that, to be moot, a case "must lack at least one of the three required elements of Article III standing: (1) injury in fact, (2) causation, or (3) redressability." *Townes v. Jarvis*, 577 F.3d 543, 546–47 (4th Cir. 2009). One "circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011).

Counts 1 and 2 of the Complaint no longer appear live. The Complaint's two claims alleged violations of RLUIPA based on the County's discriminatory denial of the pump-and-haul permit. (Complaint ¶¶ 60, 62; *see id*. ¶¶ 1, 13–58). The Government cannot obtain damages in a RLUPA suit, but may sue only for injunctive or declaratory relief. 42 U.S.C. § 2000cc-2(f). Because the ICC has now obtained the permit, there is simply no RLUIPA right left to adjudicate. Retrospective relief is not available, and prospective relief is not available because the alleged violation has been cured. *See Centro Familiar Cristiano Buenas Nuevas v. City of*

– 5 –

*Yuma*, 651 F.3d 1163, 1168 (9th Cir. 2011) (observing, in RLUIPA case brought by private plaintiff, that "[i]f damages were not allowable, then mootness of the declaratory judgment and injunction claims would moot out the entire case").[3]

Be that as it may, the Court turns to the parties' positions.

I.  **The County Has Ceased Its Alleged Discriminatory Denial of the ICC's Permit, Which Cannot Be Reasonably Expected to Reoccur**.

The County relies on the "voluntary cessation of illegal activity" doctrine, which moots a case when there is "no reasonable expectation that the wrong will be repeated." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001). The wrong here was the treatment of the ICC (specifically, the permit denial) in a way that allegedly violated RLUIPA.

The County bears the "heavy burden" of showing that it cannot simply return to its "old ways after the threat of a lawsuit has passed." *Lyons*, 243 F.3d at 800. This burden is satisfied when a defendant "enters into an unconditional and irrevocable agreement that prohibits it from returning to the challenged conduct," or by changing a governmental policy "when the governmental entity has not asserted its right to enforce [the challenged policy] at any future

---

[3] The point applies equally to declaratory relief. "The purpose of a declaratory judgment is to 'declare the rights of litigants.' The remedy is thus by definition prospective in nature." *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 628 (3d Cir. 2013) (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995)). The Government offers no specific defense of why its declaratory relief is not moot. It does not explain what, precisely, it would have the Court declare. Presumably it is that the County violated RLUIPA. But the Court has no power to abstractly opine on a question that is no longer live and would not affect the parties' rights; that would be an advisory opinion. *See Hewitt v. Helms*, 482 U.S. 755, 761 (1987); *Centro*, 651 F.3d at 1167 (holding RLUIPA claim moot since claimant was not "entitled to a declaration that a code provision and statute violate federal law, because they no longer affect[ed]" church); *CMR*, 703 F.3d at 628 ("[D]eclaration of [illegality] directed against the objectionable features of the March 2006 Ordinance would serve no purpose today."); *Parkell v. Senato*, No. 17-1101, 2017 WL 2954599, at *2 (3d Cir. July 11, 2017) (holding same in RLUIPA case); *Jordan v. Sosa*, 654 F.3d 1012, 1030 (10th Cir. 2011) (declaratory judgment "would amount to nothing more than a declaration that [plaintiff] was wronged, and would have no effect on the [defendant's] behavior"); *id*. at 1032 (inquiring if declaratory relief "will have any effect in the real world").

– 6 –

time." *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017). It should be "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id*. at 360.

The County thus far has: (1) granted the permit to the ICC; (2) agreed—through its settlement with the ICC, over which this Court retains jurisdiction and has the authority to enforce—"to not delay or hinder the expeditious approval of any further applications related to the construction or beneficial use of the mosque by the ICC" and; (3) enacted a new policy designed to clarify and formalize its criteria for pump-and-haul permits. The County thus contends it ended "the alleged unlawful act by granting the Permit [and] a decision by the Court will have no effect on the Parties [since] the [Government] is precluded from claiming damages in RLUIPA matters." (Dkt. 95 at 10). It says any ruling from the Court about a violation of RLUIPA would be an impermissible advisory opinion that "cannot affect the rights of the litigants in the case before it." *St. Pierre v. United States*, 319 U.S. 41, 42 (1943).

Courts have found that changes to the underlying subject of litigation can moot RLUIPA challenges. For instance, the Ninth Circuit held that a church's "claims for declaratory judgment and injunction [were] moot" when (1) the property they sought to operate as a church was sold by them, and (2) the city code they sought to enjoin had changed. *Centro*, 651 F.3d at 1167.

> The church no longer owns the old J.C. Penney store building, so the city could not be required to issue a conditional use permit for the building to the church. Nor could the church be entitled to a declaration that a code provision and statute violate federal law, because they no longer affect the church.

*Id*.; *see Church v. City of St. Michael*, 205 F. Supp. 3d 1014, 1021, 1030 (D. Minn. 2016) (finding declaratory and injunctive relief moot where City amended ordinance to allow churches as conditional uses and then granted church a conditional use permit).

Likewise here, the County could not be required to issue the ICC a permit (because it already did so), and a declaration that the County's actions violated RLUIPA would no longer

– 7 –

affect the ICC's rights.[4] Ultimately, in ways that illustrate mootness, this case is similar to the Fourth Circuit's decision in *Grutzmacher v. Howard County*, 851 F.3d 332 (4th Cir. 2017), and dissimilar to its opinion in *Porter v. Clarke*, 852 F.3d 358 (4th Cir. 2017).

The *Grutzmacher* plaintiff argued his free speech challenge to a police department's social media guidelines was not moot. 851 F.3d at 348. The defendant had repealed the challenged policy, adopted a new one without the objectionable provisions, and expressly affirmed in a sworn affidavit that it "did not intend to readopt or enforce" the old policy. *Id.* at 349. Detecting "no hint" of an intention to reinstitute prior policies and with "the absence of evidence to the contrary," the Fourth Circuit found the defendant had carried its "heavy burden" of showing it would not revert to its previous conduct. *Id*.

The County has acted analogously. It agreed with the ICC to remedy the objected-to decision, and then did so by a formal binding vote of its governing body. (Dkts. 95-2, 95-3). The County further warranted that it would not "hinder or delay the expeditious approval of any further applications" that the ICC needed to construct the mosque. (Settlement Agreement § II.B). It has posted RLUIPA notices in its Planning and Zoning office, inserted a RLUIPA nondiscrimination notice in its pump-and-haul application packets, created a RLUIPA complaint form, and posted the form on its website. (Dkts. 95-5, 95-6, 95-7). The County has also provided a RLUIPA presentation to its staff modeled on those given by the Department of Justice. In other words, the County has put forth substantial, uncontroverted evidence that it has fixed the underlying wrong and has taken steps to ensure it does not happen again. There is "no

---

[4] To avert this conclusion, the Government claims for itself an indeterminate, amorphous interest "broader" than the ICC's rights, including the rights of unspecified "other[s]." (Dkt. 106 at 1, 4–6, 10). But as detailed elsewhere, the Government does not explain how those supposed interests are manifested in the Complaint, which dealt solely with the ICC's rights regarding the permit denial. *See infra* Section II.

– 8 –

hint" it will continue to discriminate against the ICC or violate RLUIPA.

*Porter* involved a challenge to executive branch policies about treatment of death row inmates. While the Virginia Department of Corrections changed its policies during litigation, the parties could not settle because plaintiffs "had not received reasonable assurances that any of [the revised policies] will remain in place" and there was "nothing stopping the government from revoking those policies immediately." 852 F.3d at 362. The Fourth Circuit found that nothing prohibited defendants from returning to their old ways. *Id*. at 365.

> More significantly, throughout the course of this litigation, Defendants have refused to commit to keep the revised policies in place and not revert to the challenged practices. On the contrary, as the district court found, Defendants repeatedly have decline[d] to explicitly acknowledge that the pre-2015 conditions of confinement were unconstitutional or to offer explicit guarantees that the [Corrections Department] will not return to those conditions. . . . Indeed, during oral argument, Defendants' counsel said the Corrections Department could not foreswear a return to the challenged policies . . . .

*Id.* (internal quotations omitted). Based on the same facts reviewed above, that is not the situation here: The County has granted the ICC its permit through formal action and entered into a binding settlement with the ICC, which among other things requires the County not to hinder or delay approval of other permits needed to build a mosque. Violation of that promise is enforceable by the ICC by this Court. The County has also taken additional steps to clarify its permitting process and prevent future RLUIPA violations. There is, then, far from "nothing stopping" the County from discriminating against the ICC again.[5]

---

[5] The Government contends that the County could nonetheless hypothetically burden the ICC by denying it *other* permits, or burden *other applicants* by denying their permits. (Dkt. 106 at 1, 9–10). But the Government did not file a Complaint about other claimants or about other permits, and it has not sought leave to amend to do so. Instead, it filed a lawsuit about a very specific subject: a pump-and-haul permit for the ICC.
 The Government's lone colorable argument on this score is based on the County's underlying "pump and haul agreement" with the ICC, setting forth the terms with which the ICC must comply to keep its permit. The agreement is voidable upon breach after 5 days notice and

– 9 –

**II.     The Government's Purported "Broader," "Independent" Interest**

The Government's primary argument in response to the County is that the "claims in this lawsuit are broader than, and independent of, any interest that a private party, such as the ICC, may have." (Dkt. 106 at 4). Substantively, the Government does not explain why RLUIPA's text (or any case discussing it) makes this so. Procedurally, the Government's statement is divorced from reality of the Complaint it filed.

First, RLUIPA contains a singular reference to the Government's authority to "bring an action for injunctive or declaratory relief to *enforce* compliance with" RLUIPA; it does not confer on the Government far-reaching regulatory or rulemaking powers. 42 U.S.C. § 2000cc-2(f) (emphasis added). The substantive protections of RLUIPA concern themselves with specific violations of rights held by particular people or religious groups. *Id*. § 2000cc. The Government cannot say how it could continue to "enforce" these underlying rights without reference to a particularized event or events that allegedly violated them. *See* Black's Law Dictionary (10th ed. 2014) (defining "enforce" as "[t]o give force or effect to (a law, etc.); to compel obedience to"). Put another way, the Government does not explain why RLUIPA authorizes it to prolong *this* litigation to cure a *specific* violation of RLUIPA that the County has already remedied.

Second, at the risk of redundancy, the Government's claims in the Complaint do not seek to enforce RLUIPA rights "broader" than and "independent" from those of the ICC, even

---

by the County "for any reason" upon 30 days notice. (Dkt. 106-1 at ECF 11–12, ¶¶ 6-7).
But the Government's fear of revocation is speculative, as it has presented no evidence suggesting the County has any inclination to cancel the permit. On the contrary, the current record assures the Court that the County—given the remedial action steps it has taken—will not unjustly terminate the permit, and that it is otherwise prepared to move forward with the ICC in good faith. Moreover, the Settlement Agreement in the ICC's lawsuit backstops the pump and haul agreement, and the Court would retain jurisdiction to address any refusal to comply with the Settlement Agreement, which specifically protects the ICC's ability to receive permits it needs to construct its mosque.

– 10 –

assuming they statutorily could. Rather, the Government sought to vindicate precisely and exclusively the ICC's rights under RLUIPA as to the permit denial. (*See*, *e.g.*, Complaint ¶¶ 1, 60, 62). "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013); *see vonRosenberg v. Lawrence*, 849 F.3d 163, 167 n.1 (4th Cir. 2017) (refusing to consider a "theory [that] differs from that alleged in the complaint").

Third, the Government's central contention—that its claims cannot be "barred from litigation" simply because of a private party's action (dkt. 106 at 5)—is something of a straw man. The principle is unobjectionable, as far as it goes. But the issue here is not whether the actions of a third-party *per se* bar the United States from litigating cases generally. It is instead whether Article III permits this Court to keep alive a RLUIPA case in light of evidence which includes *both* a private settlement remedying the wrong challenged by the Government *and* other measures designed to prevent a relapse.

This is precisely the approach endorsed by *United States v. Borden Co.*, 347 U.S. 514 (1954), relied on by the Government. *Borden*, an antitrust case, reversed a district court for denying, out of hand, final injunctive relief against an ongoing conspiracy "solely because" a consent decree against the defendants already existed in private litigation. *Id*. at 518.

The Supreme Court took care to observe that "we cannot say that the existence of the private decree warrants no consideration by the chancellor in assessing the likelihood of recurring illegal activity." *Borden*, 347 U.S. at 520. Rather, *Borden* held "*only* that, *in view of the difference in the respective interests sought to be vindicated* by the Government and the private litigant, the district judge abused his discretion in refusing the Government an injunction *solely* because of the existence of the private decree." *Id.* (emphasis added).

– 11 –

In this case, the "interests sought to be vindicated" by the Government were—on the face of its own Complaint—simply the ICC's RLUIPA rights. And unlike in *Borden*, which turned in no small part on the contours and purposes of the Clayton and Sherman Acts, the "scheme of the statute" here does not so "sharply distinguish between Government suits" and private ones. *Id*. at 518–20. Finally, while the Settlement Agreement goes a long way towards demonstrating the unlikelihood of recurring illegal activity, that is not the only thing: The County's independent, additional steps also lend credence to its position. Those actions, as well the settlement, all warrant consideration and create a persuasive case for mootness. *See Borden*, 347 U.S. at 520.

Finally, the remaining cases cited by the Government—none of which are binding authority—do not involve RLUIPA, and most of them do not address mootness. For instance, *United States v. East Baton Rouge Parish School Board*, 594 F.2d 56 (5th Cir. 1979), was a voting rights case that decided whether a private litigant's prior case barred the Government's lawsuit on *res judicata* grounds.[6]

This is, in short, not a case in which the defendant has offered merely "unsubstantiated assurances" and "bald assertions" that the alleged harm has ceased. *Wall*, 741 F.3d at 497–98. The County has provided substantial and convincing evidence that it has taken concrete, binding steps to remedy the complained-of violation and make sure it does not reoccur.

## III. The RLUIPA Safe Harbor

As an alternative ground of dismissal, the County argues that its actions bring it within

---

[6] Likewise, *E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1283, 1285–94 (11th Cir. 2004), was about preclusion instead of mootness, and involved the Government's enforcement of employment discrimination law, a topic on which the relevant statutes vest far greater powers and responsibilities in the Government than RLUIPA. *Id*. at 1291–92. And although *E.E.O.C. v. Goodyear Aerospace Corp.*, 813 F.2d 1539 (9th Cir. 1987), dealt with mootness, it too was an employment case governed by statutes which—contrary to the governing law and allegations here—permitted the United States to seek "class action-type relief" benefiting "similarly-situated employees" even "without complying with" Federal Rule of Civil Procedure 23. *Id*. at 1542–43.

RLUIPA's safe harbor provision, which provides:

> A government may avoid the preemptive force of any provision of this chapter by *changing the . . . practice that results in a substantial burden* on religious exercise, by retaining the . . . practice and exempting the substantially burdened religious exercise, by providing exemptions from . . . practice for applications that substantially burden religious exercise, *or by any other means that eliminates the substantial burden*.

42 U.S.C. § 2000cc-3(e) (emphasis added).[7]

The Government characterizes the provision as stressing that:

> there are any number of ways in which a substantial burden on religion might in fact be eliminated, and RLUIPA does not purport to prescribe which means of eliminating a substantial burden must be chosen. This provision was included by Congress to make clear that RLUIPA does not require a local government to 'enact or enforce a federal regulatory program'. . . . A local government is not required to adopt a federally prescribed zoning scheme or adopt any particular measures, so long as whatever remedial measures it adopts actually eliminate the substantial burden on religious exercise.

(Dkt. 106 at 15–16). The Court agrees, which is why the Government's objections that the County has not gone far enough fail.

The Government first contends that the "County's new pump and haul policy is deficient." (Dkt. 106 at 10). But the Government did not sue over (or seek leave to amend to sue over) the County's 2017 policy. It filed suit about a one-time departure from the County's historical practice that adversely affected the ICC. If the Government believes the County's new policy violates a person's or religious institution's rights under RLUIPA (something it is has not shown), it can file a new suit to enforce rights of plaintiffs who, unlike the ICC, lack a permit.

---

[7] Courts have interpreted the safe harbor provision to reach discrimination claims under § 2000cc(b), not only substantial burden claims. *E.g.*, *Civil Liberties for Urban Believers v. City of Chi.*, 342 F.3d 752, 762 (7th Cir. 2003); *Grace Church of Roaring Fork Valley v. Bd. of Cty. Comm'rs of Pitkin Cty.*, 742 F. Supp. 2d 1156, 1160 (D. Colo. 2010); *Church v. City of St. Michael*, 205 F. Supp. 3d 1014, 1031–32 (D. Minn. 2016); *Petra Presbyterian Church v. Vill. of Northbrook*, 409 F. Supp. 2d 1001, 1008 (N.D. Ill. 2006), *aff'd*, 489 F.3d 846 (7th Cir. 2007).

– 13 –

Next, the Government complains that the County's RLUIPA notices are not conspicuous enough and that the County "is not committing to document its compliance with RLUIPA." (Dkt. 106 at 11–12). The Government cites no law and fashions no legal analysis as to why the these steps (the first of which is not supported by the record) are needed to vindicate the ICC's rights or are otherwise necessary—in light of all the other evidence—to ensure the County does not resume its allegedly unlawful conduct.

Lastly, the Government complains that the County did not require its Board of Supervisors to attend its RLUIPA training. But the frontline employees were given this training (the County Planning Commission, staff in the Planning and Zoning Department), and the Board received handout copies of the presentation slides. (*See* dkt. 108 at 11–12; dkt. 108-1).

Taken together, the Government's additional measures are marginal quibbles that overlook the forest for the trees. They are based on a presumption of bad faith by the County, a presumption supported by little more than bald assertions and which the County has overcome with compelling and unimpeached evidence.

The safe harbor provision embodies a congressional policy against federal micromanagement of a locality's land use decisions, as long as the underlying RLUIPA violation has been cured. *See Church v. City of St. Michael*, 205 F. Supp. 3d 1014, 1031 (D. Minn. 2016) ("[A] government can avoid liability under RLUIPA by amending its land use regulations to remove the allegedly burdensome or discriminatory provisions . . . ."); *Forter v. Geer*, 868 F. Supp. 2d 1091, 1098 (D. Or. 2012), *aff'd,* 536 F. App'x 724 (9th Cir. 2013). The Court holds that the Settlement Agreement and the County's additional measures have done that, as well as eliminated any reasonable probability that the alleged wrong will reoccur. *See Porter*, 852 F.3d at 360, 364; *Lyons*, 243 F.3d at 800.

## SUMMARY

This case will be dismissed without prejudice because it is moot. An appropriate order will issue. The Clerk of Court is directed to send a copy of this opinion and the accompanying order to counsel of record.

Entered this 1st day of September, 2017.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE